UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAUD MARON,<br><br>           Plaintiff,<br><br>v.<br><br>THE LEGAL AID SOCIETY AND ASSOCIATION OF LEGAL AID ATTORNEYS,<br><br>           Defendants. | Case No. 1:21-cv-05960-KPF |

### UNION DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6) TO DISMISS THE FIRST AMENDED COMPLAINT

                        Levy Ratner, P.C.
                        80 Eighth Avenue, Floor 8
                        New York, NY 10011-5126
                        (212) 627-8100
                        (212) 627-8182 (fax)

On the Brief:  Allyson L. Belovin
         Rebekah Cook-Mack

12-002-00017: 11263006_5

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 1

ARGUMENT .................................................................................................................................... 3

I.     MOTION TO DISMISS STANDARD ................................................................................ 3

II.    TITLE VII CLAIMS AGAINST UNIONS ARE GROUNDED IN THE UNION'S DUTY OF FAIR REPRESENTATION. ............................................................................. 4

III.   THE UNION DID NOT VIOLATE THE DUTY OF REPRESENTATION OWED TO PLAINTIFF. ........................................................................................................................ 5

IV.   THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A PRIMA FACIE CLAIM UNDER TITLE VII. ........................................... 9

    A.    Plaintiff's Opinion is Not Protected By Title VII. .................................................... 9

    B.    Plaintiff Has Not Alleged Facts Sufficient to Establish That She Suffered an Adverse Employment Action. ................................................................................. 10

        1.    Plaintiff Has Not Alleged Facts to Establish a Hostile Workplace Claim. ........................................................................................................ 11

        2.    Plaintiff Has Not Alleged Facts to Establish A Constructive Discharge Claim. ........................................................................................................ 13

CONCLUSION ............................................................................................................................... 15

12-002-00017: 11263006_5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agosto v. N.Y.C. Dep't of Educ.*,
    982 F.3d 86 (2d Cir. 2020) ................................................................................... 11

*Airline Pilots Ass'n Int'l v. O'Neill*,
    499 U.S. 65 (1991) ............................................................................................ 6, 7

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ................................................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 3, 4, 9

*Barr v. United Parcel Serv., Inc.*,
    868 F.2d 36 (2d Cir. 1989) .................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 3, 4

*Bostock v. Clayton Cty., Ga.*,
    140 S. Ct. 1731 (2020) .......................................................................................... 8

*Bovers v. Flying Tiger Line Inc.*,
    979 F.2d 291 (2d Cir. 1992) ................................................................................ 14

*Considine v. Newspaper Agency Corp.*,
    43 F.3d 1349 (10th Cir. 1994) ............................................................................... 7

*Cooper v. TWA Airlines, LLC*,
    274 F. Supp. 2d 231 (E.D.N.Y. 2003) ............................................................... 6, 7

*Desardouin v. City of Rochester*,
    708 F.3d 102 (2d Cir. 2013) ................................................................................ 11

*Ford Motor Co. v. Huffman*,
    345 U.S. 330 (1953) .............................................................................................. 5

*Glover v. St. Louis-S.F. Ry. Co.*,
    393 U.S. 324 (1969) ............................................................................................ 14

12-002-00017: 11263006_5

*Hague v. United Paperworkers Int'l Union*,
  949 F. Supp. 979 (N.D.N.Y. 1996) ............................................................................... 4, 6

*Johnson v. Levy*,
  812 F. Supp. 2d 167 (E.D.N.Y. 2011) ............................................................................. 13

*Kern v. City of Rochester*,
  93 F.3d 38 (2d Cir. 1996) ................................................................................................. 4

*Klaper v. Cypress Hills Cemetery*,
  No. 10-CV-1811, 2012 WL 959403 (E.D.N.Y. Mar. 21, 2012) ....................................... 4

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) ............................................................................................. 9

*Marquez v. Screen Actors Guild*,
  525 U.S. 33 (1998) ........................................................................................................... 6

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ......................................................................................................... 9

*N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters*,
  740 F.2d 141 (2d Cir. 1984) ......................................................................................... 5, 6

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) ......................................................................................................... 11

*Oparaji v. United Fed'n of Tchrs.*,
  418 F. Supp. 2d 139 (E.D.N.Y. 2006) .............................................................................. 5

*Robesky v. Quantas Empire Airways, Ltd.*,
  573 F.2d 1082 (9th Cir. 1978) .......................................................................................... 6

*Silva v. Legendary, Inc.*,
  No. 3:14CV288/MCR/CJK, 2016 WL 3556816 (N.D. Fla. Mar. 21, 2016) .................... 9

*Silverman v. City of New York*,
  216 F. Supp. 2d 108 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) ............... 13

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002) ............................................................................................. 4

*Spellacy v Airline Pilots Ass'n-Int'l*,
  156 F.3d 120 (2d Cir. 1998) ........................................................................................ 7, 10

*Stephens v. 1199SEIU, AFL-CIO*,
   45 F. Supp 3d 284 (E.D.N.Y. 2014) ............................................................................... 7

*Vaca v. Sipes*,
   386 U.S. 171 (1967) ....................................................................................................... 5

*Vera v. Saks & Co.*,
   424 F. Supp. 2d 694 (S.D.N.Y.) ................................................................................... 14

*Vietnam Ass'n. for Victims of Agent Orange v. Dow Chem. Co.*,
   517 F.3d 104 (2d Cir. 2008) ....................................................................................... 3, 4

*White v. White Rose Food, a Div. of DiGiorgio Corp.*,
   237 F.3d 174 (2d Cir. 2001) .......................................................................................... 5

*Zeyer v. Bd. Of Educ.*,
   98 F. Supp. 3d  (D. Conn. 2015) ................................................................................. 14

**Statutes**

National Labor Relations Act, 29 U.S.C. § 159(a) ............................................................... 5

Title VII, 42 U.S.C.A. § 2000e ............................................................................... 1, 4, 5, 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 1, 3

**Other Authorities**

*The Fight to Desegregate New York Schools*,
T<small>HE</small> N.Y. T<small>IMES</small> (Dec. 8, 2019),
https://www.nytimes.com/2019/10/18/the-weekly/nyc-schools-segregation.html? ....................... 2

# INTRODUCTION

Defendant Association of Legal Aid Attorneys ("ALAA" or "Union") respectfully submits this memorandum of law in support of its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint ("Am. Compl.") for failure to state a claim upon which relief can be granted.

# PRELIMINARY STATEMENT

Plaintiff Maud Maron ("Plaintiff" or "Maron"), a candidate for New York City Council and a former employee of The Legal Aid Society ("LAS" or "Employer"), brought this action against the Union and LAS regarding social media posts both LAS and the Union made in response to a New York Post OpEd in which Plaintiff, among other things, ignores the existence of institutional racism. The Black Attorneys of Legal Aid ("BALA"), a Union caucus, posted to Twitter criticizing Plaintiff's position and questioning her ability to represent LAS clients who are predominately people of color. LAS subsequently re-tweeted BALA's post and issued a statement of its own criticizing Plaintiff's position. In this action, Plaintiff claims that the Union and LAS discriminated against her in violation of Title VII.

Plaintiff's claim against the Union is properly viewed as a claim that the Union breached its duty of fair representation ("DFR"). Plaintiff's Amended Complaint fails to allege a plausible DFR claim under applicable and well-established law as Plaintiff has failed to plead facts sufficient to show that the Union acted in an arbitrary, discriminatory or bad faith manner. For the reasons discussed herein, Plaintiff's Amended Complaint should be dismissed in its entirety.

# STATEMENT OF FACTS

Plaintiff was employed as a Staff Attorney at the LAS for approximately 12 years, during which time she was represented by the Union and was covered by the Collective Bargaining Agreement between the Union and LAS ("CBA"). Am. Compl. ¶¶ 1, 3, 7, 8, 63, ECF No. 24 &

- 1 -

Ex. D, ECF No. 24-4.  In or around January 2020, Plaintiff, a candidate for New York City Council, took a leave of absence from her job at LAS to focus on her candidacy.  Am. Compl. ¶¶ 8,10 & Ex. 1 to Decl. of Allyson L. Belovin ("Ex. 1").

On or about July[1] 23, 2020, while on leave from LAS and as part of her political campaign, Plaintiff published an opinion piece in the New York Post titled "Racial obsessions make it impossible for NYC schools to treat parents, kids as people" ("NYP OpEd").  Am. Compl. ¶¶ 23-27 & Ex. A, ECF No. 24-1.  During this period, Plaintiff publicly stated her opinion on racial issues on multiple other occasions in multiple fora, including in testimony before the New York City Council and in an interview with Nikole Hannah-Jones for the New York Times.  Am. Compl. ¶ 28 and *The Fight to Desegregate New York Schools*, THE N.Y. TIMES (Dec. 8, 2019), https://www.nytimes.com/2019/10/18/the-weekly/nyc-schools-segregation.html?.

On or about July 26, 2020, BALA, a Union caucus, issued a statement on Twitter ("BALA Tweet") in response to the NYP OpEd.  Am. Compl. ¶ 29 & Ex. B, ECF No. 24-2.  In the tweet, BALA strongly criticized Plaintiff's views on race, denounced her opposition to racial equality in the New York City school system and cited her as a "classic example of what 21st century racism looks like."  Am. Compl., Ex. B.

Shortly thereafter, LAS re-tweeted the BALA Tweet ("LAS Re-tweet") and subsequently issued its own statement in response to the NYP OpEd ("LAS Statement").  Am. Compl., Ex. C, ECF No. 24-3 & Ex. E, ECF No. 24-5, respectively.  In that statement, LAS condemns Plaintiff's

---

[1] Although Paragraph 23 of the Amended Complaint states, "On June 23, 2020, Ms. Maron's opinion piece… was published by the New York Post" the attached article is dated *July* 23, 2020.

- 2 -

denial of the existence of structural and institutional racism and decries Plaintiff's complicity in the system of oppression.  Am. Compl., Ex. E.

To date, Plaintiff has not ended her leave of absence, but alleges in her Amended Complaint that she will not be able to return to work at LAS.  Am. Compl. ¶¶ 8, 82.  Plaintiff did not file a grievance regarding the BALA Tweet, the LAS Re-tweet or the LAS Statement; nor did she avail herself of the procedures for resolving disputes between co-workers set forth in the CBA.  Am. Compl. ¶ 90 & Ex. D.

## ARGUMENT

### I.     MOTION TO DISMISS STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

While a court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving

party", *Vietnam Ass'n. for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted), this tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 677. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'…Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting from *Twombly*, 550 U.S. at 555, 557 (2007)).

Thus, the Amended Complaint must allege facts that satisfy each element required for a recovery under the legal theory in question. The Court may not accept as true the pleader's bald assertions and legal conclusions, nor will it draw unwarranted inferences to aid the pleader. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted); *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (conclusory allegations are not sufficient to defeat a motion to dismiss); *Hague v. United Paperworkers Int'l Union*, 949 F. Supp. 979, 987 (N.D.N.Y. 1996) (plaintiff's mere "conclusory allegations of arbitrariness and bad faith . . . , 'without specifying supporting facts to show a union's lack of good faith, fail to state a valid claim.'" (citation omitted)).

As demonstrated below, Plaintiff's allegations against the Union are conclusory and fail to allege facts essential to prove a breach of the Union's DFR. Accordingly, the Amended Complaint fails to state a plausible claim against the Union and should be dismissed.

## II. TITLE VII CLAIMS AGAINST UNIONS ARE GROUNDED IN THE UNION'S DUTY OF FAIR REPRESENTATION.

Courts have consistently held that "[c]laims against labor organizations are grounded in the union's duty of fair representation ('DFR') to its members." *Klaper v. Cypress Hills Cemetery*, No. 10-CV-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). To establish a

Title VII claim concerning a union's representation, a plaintiff must first demonstrate that the union breached its DFR and then plaintiff must show that the union's actions were motivated by unlawful discrimination or retaliation. *See Oparaji v. United Fed'n of Tchrs.*, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006). Plaintiff has failed to allege facts that demonstrate either.

### III.   THE UNION DID NOT VIOLATE THE DUTY OF REPRESENTATION OWED TO PLAINTIFF.

Neither the BALA Tweet, the LAS Re-tweet, nor the LAS Statement breach the Union's DFR. The "duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 n.3 (2d Cir. 2001). In the seminal case of *Vaca v. Sipes*, 386 U.S. 171 (1967), the Court defined the judicially developed doctrine of the duty of fair representation and recognized the Union's status as exclusive bargaining agent as the source of the duty:

> [T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Id.* at 177.

In *Vaca*, *supra*, the Court defined the breach of duty of fair representation as involving "conduct toward a member [that] is arbitrary, discriminatory, or in bad faith*." Id.* at 190. The basic inquiry, therefore, is to determine whether the specific factual situation indicates "hostile discrimination" based on "irrelevant and invidious" conditions or is, instead, within a "wide range of reasonableness" granted bargaining agents. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). In other words, the Union's conduct in dealing with a member must be "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters*, 740

- 5 -

F.2d 141, 147 (2d Cir. 1984) (quoting *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082, 1089-90 (9th Cir. 1978)).

The "wide range of reasonableness" standard afforded unions gives them room to make discretionary decisions and choices, "even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45-46 (1998). "Tactical errors" and even negligence on the part of a union does not give rise to a breach of the DFR and as "long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43-44 (2d Cir. 1989).

The Amended Complaint simply alleges that "[i]n making its own statement and causing LAS to make a statement, ALAA breached its duty of fair representation to Ms. Maron." Am. Compl. ¶ 72. This conclusory assertion is insufficient to state a DFR claim. As noted in *Hague*, 949 F. Supp. at 987, plaintiffs' mere "conclusory allegations of arbitrariness and bad faith . . . 'without specifying supporting facts to show a union's lack of good faith, fail to state a valid claim.'" (citation omitted). Plaintiff provides no evidence to suggest the BALA statement was arbitrary, discriminatory or made in bad faith.

Plaintiff appears to claim that the Union breached its DFR because its actions – specifically, posting on Twitter and allegedly causing LAS to post on Twitter – were discriminatory.[2] Under DFR standards, a union's conduct is considered discriminatory only if its

---

[2] Plaintiff does not and cannot argue that the Union's actions were arbitrary or in bad faith. A Union's actions are "arbitrary" only if they are "so far outside a wide range of reasonableness as to be irrational." *See Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations and quotations marks omitted). Plaintiff pleads no facts from which the court could conclude that BALA's Twitter post – made in response to Plaintiff's own newsworthy and controversial position on a matter that impacts Union members' work – was irrational. A union

- 6 -

actions are invidious.  *See Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 243 (E.D.N.Y. 2003) (citing *O'Neill* and *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357-60 (10th Cir. 1994)).  "Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories or arises from prejudice or animus."  *Stephens v. 1199SEIU, AFL-CIO*, 45 F. Supp. 3d 284, 293-94 (E.D.N.Y. 2014) (citing *Airline Pilots Ass'n, Int'l*, 499 U.S. at 81).

While the Amended Complaint is replete with conclusory statements that the Union's actions were because of Plaintiff's race and/or color, and the Twitter posts would not have been made 'but for her being White,' Plaintiff fails to present *facts* to support even a minimal inference that the Union acted in a discriminatory manner because of an immutable characteristic.  *See, e.g.*, Am. Compl. ¶¶ 12, 31, 34, 41, 45, 73 & 75.  Nowhere in the Amended Complaint does Plaintiff ever explain how BALA's tweet – a statement unquestionably about race and racism responding to Plaintiff's own well publicized opinions about the same – was based on her race and/or color, rather than on her opinion.

Plaintiff's attempt to cast her opinion as inextricable from her race is unavailing.  *See* Plaintiff's Letter in Response to Defendants' Letters to the Court Regarding the Motion to Dismiss (ECF No. 22 at 2) ("Her viewpoint is inextricably linked to her being white and the response to that, calling her racist, cannot be disentangled from Ms. Maron's race or being white or member of a protected class.").  Plaintiff has pled no facts to establish that it is impossible to

---

acts in bad faith when it "acts with an improper intent, purpose, or motive....Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).  The Amended Complaint does not allege that the Union engaged in the kind of conduct required to meet the bad faith standard.

discriminate against a person holding Plaintiff's opinions without discriminating against a person based on race. *See e.g, Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1741 (2020) (holding that Title VII protects gay and transgendered employees from discrimination based on sex because "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."). Rather, Plaintiff offers only her unsupported belief that "[b]ut for Ms. Maron's racial identity, there would have been no op-ed nor would there have been either racially-hostile statement." ECF No. 22 at 2. This specious allegation that White people, and only White people, would share Plaintiff's opinion is undermined by Exhibit A to the Amended Complaint: the Maron OpEd. In her OpEd Plaintiff describes an Asian American parent who shares some of her views.

> But the endeavor [to integrate NYC public schools] has its skeptics. At one community forum, a Chinese-American parent shared that she transferred her child from a majority-white school to a less affluent, mostly Asian school, where she believed the students are "better behaved and work harder." She told me, 'I don't think sitting next to white kids is important for learning.' Then she added: "No offense, Maud." Which made me laugh and made me think.

Am. Compl., Ex. A at 3. Plaintiff and this Chinese-American parent have a viewpoint in common even though they are not the same race.

The Amended Complaint references a number of statements in the BALA tweet that Plaintiff asserts would not have been made "but for Ms. Maron being white." Am. Compl. ¶ 31. However, she offers no facts to support that assertion. For example, the Amended Complaint highlights the following sentence from the BALA tweet as one such statement: "she pretends to favor integration while fighting against it and denying the existence of racism in education." Am. Compl. ¶ 31.i. However, this statement does not reference Plaintiff's race or link Plaintiff's stances to her whiteness in any way. Rather, this and other statements in the tweet relate directly

- 8 -

12-002-00017: 11263006_5

to opinions Plaintiff repeatedly espoused in City Council testimony, in her OpEd and in her interview with The New York Times. Plaintiff offers no facts to support her conclusory allegations that her race and not her own published opinion is at the heart of this case. Title VII does not offer protection based upon one's unpopular and controversial positions, so the Amended Complaint should therefore be dismissed.

IV. **THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A PRIMA FACIE CLAIM UNDER TITLE VII.**

A prima facie claim for employment discrimination under Title VII requires a plaintiff to allege that (1) she is a member of a protected class, (2) was qualified for the position, (3) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation based on her protected status and (4) suffered an adverse employment action. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) pleading requirements in light of *Ashcroft*, 556 U.S. at 678). Plaintiff's Amended Complaint fails to allege facts sufficient to meet its burden under prongs three and four of this test. Plaintiff does not allege facts to demonstrate she suffered an adverse employment action and does not present facts to support her assertion that she was discriminated against based on an immutable protected status. Rather, she presents ample evidence that her opinions – which are not protected by Title VII – were the basis for any harm she suffered.

A. **Plaintiff's Opinion is Not Protected by Title VII.**

The language of Title VII is clear. It prohibits discrimination on the basis of "race, color, religion, sex, or national origin" 42 U.S.C.A. § 2000e-2 "Title VII does not protect speech or political views." *Silva v. Legendary, Inc.*, No. 3:14CV288/MCR/CJK, 2016 WL 3556816, at *5 (N.D. Fla. Mar. 21, 2016). As discussed in Section III, *supra*, Plaintiff does not allege facts,

which if true, would demonstrate that the complained of acts (the BALA statement, LAS Re-tweet and LAS Statement) were undertaken because of her race.

Plaintiff has alleged no facts to suggest an inference of discriminatory motivation.

### B. Plaintiff Has Not Alleged Facts Sufficient to Establish That She Suffered an Adverse Employment Action.

Even if the Court were to determine that Plaintiff has satisfied the pleading requirements to allege the Union breached its DFR and to suggest an inference of discriminatory motivation based on her protected status, Plaintiff's Amended Complaint is also deficient in that it fails to allege that ALAA caused Plaintiff to suffer damages. This is a necessary part of Plaintiff's claim. *Spellacy*, 156 F.3d at 126 ("Establishing that the union's actions were sufficiently 'arbitrary, discriminatory or in bad faith,' is only the first step toward proving a fair representation claim. Plaintiffs must then demonstrate a causal connection between the union's wrongful conduct and their injuries"). Plaintiff alleges two theories of harm – hostile work environment and constructive discharge – neither of which is persuasive. In an effort to support both of these theories, Plaintiff alleges that the Union "caused," "encouraged," "facilitated" or "permitted" LAS to retweet the BALA statement and to issue its own statement regarding Plaintiff's OpEd. Am. Compl. ¶¶ 67, 70, 71. Plaintiff offers no facts to support these assertions.[3] Plaintiff has not alleged any word or deed on the part of the Union, or BALA in particular, that led to the LAS Re-Tweet or the LAS Statement. Her attempt to make the Union liable for any harm caused by LAS should be rejected.

---

[3] The @BALA_NYC Twitter account that BALA tweets from is a public account. Twitter does not give public users the ability to control retweets. Plaintiff's claim that ALAA caused any harm by "permitting" LAS to retweet the BALA tweet mischaracterizes the capabilities associated with public Twitter accounts. This assertion should be disregarded.

### 1. Plaintiff Has Not Alleged Facts to Establish a Hostile Workplace Claim.

Plaintiff's hostile workplace claim is similarly devoid of any supporting facts and is entirely without merit.  The Supreme Court has held that Title VII is not "a general civility code" and ". . . isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  "A hostile work environment claim requires a plaintiff to show that his or her workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered."  *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101–02 (2d Cir. 2020) (citing *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)) (internal citation omitted).  "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Id.* (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)) (internal citations omitted).  The complained of treatment must either be "a single incident [that] was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  *Id.*

Plaintiff offers no facts to suggest that the tweets at issue – posted as part of the public debate she initiated – unreasonably interfered with her work performance; nor could she do so because she was on leave from work during the entire period covered by the Amended Complaint.  Am. Compl. ¶ 8 ("Plaintiff has been on sabbatical.").  Any claim that Plaintiff *would have* experienced a hostile work environment upon her return from leave is speculative and cannot establish a hostile workplace claim.

Even if a hostile work environment could occur when someone is not in the work environment because she is on leave, Plaintiff offers no facts that show the tweets at issue had any actual impact on her employment. Plaintiff offers only the conclusory assertion that "[a]n employer who says, publicly, it is ashamed she works there and has no business working there, is not an employer any reasonable person could be expect to work for." Am. Compl. ¶ 35. Beyond this, she provides no details of how, if at all, her work environment changed following the tweets.

Because Plaintiff cannot establish that the tweets amounted to a single incident so severe and pervasive as to establish a hostile workplace, she mischaracterizes the facts in an attempt to establish a continuous hostile workplace. The Amended Complaint states:

> Ms. Maron was subjected to harassment for her political beliefs and exercise of her free expression in 2019 when Rigodis Appling, an attorney at LAS, wrote to Ms. Maron via an office-wide email, which was filled with disparaging remarks. This office-wide email also contained links to racially-charged materials that criticized and distinguished Ms. Maron from her racially "diverse constituents", that called her "racist", and that saw Ms. Maron having to defend herself from accusations of racism. Upon information and belief, but for Ms. Maron being white, Ms. Maron would not be deemed racist and this racially-disparaging email would not have been sent.

¶ 12 (footnotes omitted). No reasonable person would characterize the email Ms. Appling sent as "filled with disparaging remarks." *Id.* The entirety of Ms. Appling's email -- sent in response to Ms. Maron's own message to the LAS email group "Criminal NY Attys All" announcing the commencement of Plaintiff's leave of absence to run for City Council -- reads:

> Requesting that you please leave the Legal Aid Society's name and recognition out of your campaign materials and speeches. It's not a good look for us.
>
> https://www.change.org/p/maud-maron-protect-cre-in-schools-maud-maron-resign-from-cec2?

- 12 -

>https://www.nydailynews.com/new-york/education/ny-petition-resignation-cec-district-2-20190731-fxxeqarhlfecfm3h7x223ddegq-story.html
>
>https://www.nytimes.com/2019/10/18/the-weekly/nyc-schools-segregation.html

This message was followed by Ms. Appling's signature line. (*See* Ex. 1[4]) Plaintiff's attempt to characterize this exchange as an element of her hostile workplace claim demonstrates the flimsiness of her claim, and this claim should be dismissed.

### 2. Plaintiff Has Not Alleged Facts to Establish A Constructive Discharge Claim.

Courts in the Second Circuit generally refuse to find a constructive discharge where an employee had an avenue through which she could seek redress for the allegedly "intolerable" work atmosphere but failed to use it. *See Silverman v. City of New York*, 216 F. Supp. 2d 108, 115-16 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) (collecting cases). Here, as a Union member, Plaintiff has access to Union representation and a contractual grievance and arbitration procedure to address workplace issues. Am. Compl. ¶ 45 (*see* CBA § 1.8 attached as Ex. D to Am. Compl.). While the Amended Complaint alleges that "the ordinary grievance procedure has been rendered unavailable to Ms. Maron", that assertion is belied by other facts alleged in the Amended Complaint. Am. Compl. ¶ 45. Specifically, the Amended Complaint provides an example where, despite a disagreement with BALA, Plaintiff *was successfully*

---

[4] It is appropriate for the Court to consider the email chain that Plaintiff's Amended Complaint incorporates by reference but does not attach. *Johnson v. Levy*, 812 F. Supp. 2d 167 (E.D.N.Y. 2011) (agreeing to consider documents attached by defendants that were incorporated by reference and are integral to the complaint).

represented by the Union.[5]  Am. Compl. ¶ 17.  Plaintiff provides no basis for concluding that the same process that she successfully relied upon in January 2020 to resolve a dispute with BALA was suddenly rendered futile in July of that same year.[6]  Nor does Plaintiff provide a rationale for failing to avail herself of the contractual process specifically designed to address discrimination-related disputes between LAS employees – the very kind of dispute involved here.

> Individual Options. If both the complainant and the target of the complainant voluntarily agree, they may submit to voluntary mediation.  The Joint Union-Management Staff Attorney Affirmative Action and Diversity Committee will recommend to the Attorney-in-Chief a diverse panel of qualified mediators.  When investigation of a complaint is required, the investigation will be conducted by the Director of Diversity and Inclusion or outside counsel with appropriation experience and training consistent with EEOC guidance.

---

[5] Plaintiff's allegation that "LAS failed to release the promised statement" should be disregarded. Plaintiff provides no evidence that the precondition for issuing the statement was met.  Am. Compl. ¶ 22.

[6] Plaintiff does not allege that her failure to exhaust the grievance procedures and internal remedies provided by the CBA should be excused on the grounds that following such procedures would have been "futile." Yet even if Plaintiff's Amended Complaint could be read to so allege, *see* Am. Compl. ¶ 45, Plaintiff's argument would fail because Plaintiff has not alleged facts sufficient to support a finding that any pursuit of such remedies would have been futile.

The "futility" exception applies where "a formal effort to pursue contractual or administrative remedies would be absolutely futile." *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324 (1969); *Zeyer v. Bd. Of Educ.*, 98 F. Supp. 3d 415 (D. Conn. 2015). This exception requires "a showing of exceptional conditions," *Bovers v. Flying Tiger Line Inc.*, 979 F.2d 291, 299 (2d Cir. 1992), and largely has been limited to situations where there is strong evidence of racial discrimination and collusion between the union and employer to support a finding that "any attempts to resort to contractual remedies [would be] useless." *See, e.g., Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 707 (S.D.N.Y.). Here, Plaintiff's Amended Complaint alleges an ideological disagreement about structural racism that took place almost exclusively on Twitter and in the pages of the New York Post. Unlike the plaintiff in *Glover*, who proffered evidence of bargaining representatives and employees acting in concert with the employer to set up schemes and contrivances to bar Black employees from promotion wholly because of race, here Plaintiff simply does not allege facts sufficient to support a finding that use of the Union's grievance procedures were rendered "futile" by virtue of BALA's statements and tweets.  *See Glover*, 393 U.S. at 331.

CBA § 3.1.1.1.1 attached as Am. Compl., Ex. D.

Plaintiff had multiple avenues available to address any alleged hostile environment and failed to use any of them. Her Amended Complaint should be dismissed.

## CONCLUSION

For each and all of the reasons set forth herein, Defendant ALAA respectfully requests that this Court dismiss the Amended Complaint with prejudice and grant such other and further relief that this Court deems just and proper.

Dated:   October 1, 2021
         New York, New York

                                          LEVY RATNER, P.C.

                                          By:   *Allyson L. Belovin*
                                                Allyson L. Belovin
                                                Attorneys for Defendant Association
                                                of Legal Aid Attorneys
                                                80 Eighth Avenue Floor 8
                                                New York, New York 10011
                                                (212) 627-8100
                                                (212) 627-8182 (fax)
                                                abelovin@levyratner.com