# Exhibit A-2

# Exhibit D.2

Governing Collective Bargaining Agreement

§ 3.6.    ***INTERPERSONAL CONFLICT***.  Where personality differences between an attorney and her supervisor threaten to adversely affect effective operation of an office and/or continued employment of the attorney, the Attorney-in-Charge will, wherever feasible, transfer personnel to a work unit in the same office or, if necessary, a different office.

§ 3.7.    ***PART-TIME WORK SCHEDULES***.   The Society will provide a flexible work environment, consistent with the Society's primary obligation to its clients.

§ 3.7.1.    ***Definition and Workload***.  A part-time schedule shall be any schedule of less than one hundred [100] percent of an ordinary schedule. A part-time attorney's workload will be adjusted in proportion to her schedule.

§ 3.7.2.    ***Positions***.   All Staff Attorneys may apply for a part-time schedule. Assuming the necessary demand, there will be a minimum of ten [10] positions in CAB, twenty [20] positions in CDD, nine [9] positions in Civil, and ten [10] positions in JRP.  Many part-time positions in CDD and JRP must be worked in job share teams in order to be feasible from a workflow standpoint.  A Staff Attorney who is working part-time as a transitional (less than ninety [90] days) accommodation for a disability shall not be counted towards these minimum numbers, although part-time schedules in accommodation of a disability that is expected to last in excess of ninety [90] days would be considered to be part of the practice's minimum allocation.  The Society shall make reasonable efforts, subject to staffing considerations, to grant requests for part-time schedules above the minimum levels.

§ 3.7.3.    ***Scheduling and Selection***.  A request for a part-time schedule shall be submitted, to the extent possible, at least ninety [90] days in advance of the intended start date of the schedule.  If the minimum number of positions for that attorney's practice are not filled, the request will be granted and the starting date will be arranged to match the request as closely as possible.  If the minimum number of positions for that attorney's practice are filled, the Society may delay or deny commencement of a part-time schedule due to workload and staffing considerations.  Any necessary delay or denial of a part-time schedule will be accompanied by a written statement of the workload and staffing considerations that are at issue, and the manager's best estimate of when they can be overcome.  Wherever there is a surplus of outstanding applications, a first preference shall be given to those applicants who will use their non-work time to be an "at-home" parent with childcare responsibility during those hours; a second preference shall be given based on seniority.

§ 3.7.4.    ***Hours and Compensation***.  Staff Attorneys who job share will have the individual option to work more than 50% paid time, subject to prior Management approval.  The Society shall not incur costs that are disproportionate to the Staff Attorney's reduced schedule. Part-time employees whose schedules fall within the eligibility requirements for our various lines of insurance (currently 17.5 hours per week for health coverages, long term disability and life insurance) will continue to have access to coverage, but will be required to pay a  percentage of the premium that is equal to their percentage of non-work time, except that current Staff Attorneys on part-time schedules whose benefits payments have been set under the former contract will not have their current payment increased by operation of this agreement so long as they remain continuously in part-time status. While the Society will provide office space to part-time employees in accordance with current standards to the extent such space is available, increased use of part-time employees may call for reasonable accommodations in the use of space in order to avoid incurring costs that are

disproportionate to part-time attorneys' schedules. Effective September 1, 2001, part-time employees will advance annually on the salary schedule.

§ 3.7.5.      *Availability and Coverage*. During the non-work part of the work week, part-time attorneys will be available for emergencies, court appearances, conferences, or necessary telephone consultations. If a CDD part-time attorney works a night or weekend arraignment shift in addition to her regular hours, she will earn a comp day which may accrue and which may be cashed in; if, due to trial or other necessary commitments, a part-time trial attorney must work more days in the week than the attorney is scheduled to work, the attorney, in consultation with her supervisor, will make adjustments in her future work schedule to restore the balance and/or will have her pay adjusted for the relevant pay period(s) to reflect the work.

§ 3.7.6.      *Other Employment*. Other gainful employment or professional activities, except for bar association or Union activities, are prohibited during non-work hours.

§ 3.7.7.      *Return*. A qualifying attorney who holds one of the minimum number of part-time positions cannot be returned to full-time status against her will. Except in JRP, an attorney who received one of the minimum number of part-time positions shall have the right to return to a full-time schedule on thirty [30] days notice. All part-time attorneys in JRP, and attorneys holding part-time positions in other practices above the allocated minimum number may return, subject to budgetary considerations, and in no event later than the starting date of the next available full-time vacancy following the notice. If there are more applications to return to full-time status from attorneys in part-time positions above the allocated minimum number than there are available full-time positions, preference for return will be based on seniority, except that all CAB attorneys on part-time schedules as of the ratification date shall have the right to return to a full-time schedule, even if their number is in excess of the practice's allocated minimum.

§ 3.8.      *TELECOMMUTING*. Staff Attorneys will, in consultation with their supervisors, be permitted to telecommute to the extent consistent with the nature of their work and other staffing/work needs of the office. Although it has limited feasibility for many jobs, particularly in trial offices, Management will facilitate telecommuting by lending a limited number of laptop computers for limited time periods; seeking group discount buying/leasing opportunities; and maintaining and expanding the remote access properties of the network.

§ 3.9.      *TRANSFERS AND PROMOTIONS*.

§ 3.9.1.      *Voluntary*. The Society will promptly post and notify the Union of all expected Staff Attorney and supervisory vacancies. The Society shall give due consideration to 1) an attorney's request to work in a particular county because it is her county of residence or more convenient to her county of residence; 2) a senior Staff Attorney's request for a change of workplace or practice and for the appointment to new staff positions created by the Society. Every attorney who has completed her original commitment and who desires a transfer to another practice will be interviewed. Transfer requests and applications for promotion will be granted to Staff Attorneys whose qualifications are equal to those of outside candidates, subject to staffing needs and affirmative action considerations.

§ 3.9.2.      *Involuntary*. Whenever possible, an attorney who is permanently transferred from one [1] office to another will receive three [3] weeks written notice of such transfer and, upon request, a written statement of the reasons therefore. Due consideration will be given to

the request of permanently transferred attorneys to complete specific cases in which the level of preparation is such that her removal may be detrimental to the client.

## § 3.10.   *EXPENSES*.

§ 3.10.1.   *Transportation*.  Staff Attorneys in all practices leaving evening and/or night institutional assignments will be fully reimbursed for taxi fare within the five NYC boroughs. Managers will approve taxi fare beyond NYC limits on a case-by-case basis. The Society will issue expense reimbursement checks within five [5] weeks from submission of expenses forms, if forms are submitted monthly.

§ 3.10.2.   *Additional Transportation Procedures – Civil Practice.*  Staff Attorneys in the Civil Practice will be reimbursed for the cost of car service or cab fare to travel home during the evening from community outreach and other assignments away from the office as specified in Section 3.10.1.  For community outreach and home visits to homebound clients conducted during other times of the day, staff members with safety concerns about travel to and from outreach sessions should discuss with their supervisors the most appropriate means of transportation, including car service or cab fare from a central subway location to the outreach assignment. Staff Attorneys will be reimbursed for transportation methods approved by office supervisors under such circumstances. In an instance where an office supervisor determines not to approve car service or cab fare for daytime outreach, the supervisor will review that determination with the Attorney-in-Charge before a final decision is made as to the means of transportation in such cases.

§ 3.10.2.   *Additional Transportation Procedures – Criminal Practice.*  Staff Attorneys will be reimbursed for travel relating to arraignments as follows:  For Night Court: A Staff Attorney who works a night court arraignment shift will be reimbursed for parking and round-trip mileage if s/he chooses to drive to and from work.  Staff Attorneys are expected to produce receipts for their parking expenses so that the Society can comply with audit requirements.  For the first such reimbursement request seeking reimbursement for roundtrip travel from and to home under these circumstances, the Staff Attorney will generate a mapquest confirming the mileage which the Society will keep on file for future reimbursement requests.  If the Staff Attorney elects to travel to and from such a night shift by means other than her own vehicle the staff attorney will be reimbursed for cab fare home from night court as specified in Section 3.10.1.  For traditional taxis, the driver can provide the Staff Attorney with an electronic receipt to document such travel expenses.  For car services other than traditional cabs, the Staff Attorney is expected to obtain a receipt from the driver so that the Society can comply with audit requirements; if the driver refuses to provide a receipt, the Staff Attorney must attest to that fact unless the charge is less than $25.  The Society reserves the right to require Staff Attorneys to use specific car service companies which provide receipts and/or accept credit cards.   For Weekend Day Arraignments and Holiday Day Arraignments, the Society will reimburse roundtrip mileage and parking for a Staff Attorney when public transportation available to her is unreliable or the Staff Attorney is traveling from a remote location, including locations outside of the five boroughs of New York City.  Staff attorneys who seek such reimbursement must be pre-approved to do so by the Attorney-in-Charge of the Criminal Practice and such pre-approval shall continue for so long as the circumstances giving rise to the pre-approval remain in effect.

§ 3.10.4.   *Meals*.  Effective, October 4, 2017, Staff Attorneys in all practices will receive a meal allowance of upto $20.00 for performing mandatory work assignments that extend five [5] or more hours beyond the scheduled workday.  Meal allowance reimbursements up to $12.00

will be given with no receipt.  Meal allowances above $12 must be accompanied by a receipt to receive the full reimbursement.

§ 3.10.5.    ***Foreign Language Classes***.  The Society will maintain a $25,000 fund to reimburse individual Staff Attorneys a maximum of $500 annually for the cost of foreign language classes relevant to Legal Aid work.

§ 3.10.6.    ***Staten Island.***  In light of the unique circumstances that exist for Staten Island staff, the Society agrees to continue to pay for parking costs for Staten Island CDP attorneys and to begin to pay parking costs for Staten Island JRP and Civil attorneys.  The benefit will only apply to Staten Island staff and will not be expanded to staff in any other borough.

§ 3.11.    **PERSONNEL RECORDS**.

§ 3.11.1.    ***Review and Response***.  Attorneys have the right to: 1)  review their individual permanent personnel records;  2) receive a copy of any formal or informal document concerning her performance or character contained therein; and 3) have placed therein her statement concerning any such document.  A Staff Attorney will sign a receipt for every document provided under this provision, which will be attached to each such document in the file.

§ 3.11.2.    ***Disclosure to Third Party***.  During an attorney's current and immediate past employment, the Society will not disclose from such files to third parties, except with express or implied consent of the attorney, or under legal process.  An attorney who lists the Society as a current or past employer impliedly consents to the Society's disclosure of information to the person or organization to whom the fact of Society employment has been provided.

§ 3.12.    **PRO BONO REPRESENTATION**.  Staff Attorneys wishing to engage in *pro bono* legal services on their free time will inform the practice Attorney-in-Charge, who will approve activity that does not present a conflict of interest or otherwise make the attorney's services unavailable to the Society and its clients.

§ 3.13.    **SENIOR STAFF RETENTION**.  There will be a joint Union-Management committee to study the financial and other issues of retaining senior Staff Attorneys above step 13.  This committee shall provide findings to both ALAA and Management at least once per calendar year.

§ 3.14.    **JOB SECURITY**.

§ 3.14.1.    ***Plan***.  If economic retrenchment becomes necessary, the Society will work closely with the Union to ensure job security of every attorney then on staff.  Where retrenchment appears necessary, Union and Management will meet at least seventy-five [75] days in advance of the implementation date, or as soon thereafter as possible, to develop a plan.  In the course of such discussion, the Society will provide the Union with all information appropriate to an informed decision.  The Society will provide sixty [60] days' notice of the transfer or layoff of specific attorneys, or such lesser notice as is available to the Society.

§ 3.14.2.    ***Transfer***.  Where vacant Staff Attorney positions exist outside the affected practice, Staff Attorneys subject to layoff have the right to transfer to such vacant positions, under the terms below.

§ 3.14.2.1.    ***Scope***.  The right to transfer is to offices where like skills are required, e.g., trial to trial, appeal to appeal.  The Society, in consultation with the Union in regard to criteria and principles, will match attorneys and vacancies.

§ **3.14.2.2.** *Definition of Vacancy*. During economic retrenchment, the Society must make available to Staff Attorneys threatened with layoff all vacancies in all practices that are, or will become, available within a reasonable time because of known resignations, normal attrition patterns, or discharges for cause. Such positions will be made available no later than the time that the position would normally be filled. Acceptance of a job offer by an outside applicant will not constitute filling of the position if the applicant has not yet commenced employment.

§ **3.14.2.3.** *Implementation*. Where there are sufficient vacancies in the Society to place all of those subject to layoff, volunteers will be transferred first. Thereafter, transfers will be offered, on the basis of reverse seniority, to yearly groups that consist of all those whose anniversary dates, calculated in terms of continuous and unbroken bargaining unit membership, fall within the twelve [12] months from July 1 through June 30; all attorneys within a yearly group are considered to have the same anniversary date for these purposes. Attorneys in the subsequent yearly group will be transferred only when the previous group has been exhausted. If transfers must be made by choosing from among those within the same yearly group, the Society will determine the order of transfer based on merit, including affirmative action considerations. Where there are insufficient vacancies to accommodate all affected employees, transfers will be offered to yearly groups, as defined above, in seniority order.

§ **3.14.2.4.** *Status*. Each transferred Staff Attorney will be deemed a new hire for probationary purposes, based on the date of transfer.

§ **3.14.2.5.** *Refusal*. Staff Attorneys who refuse transfer will be deemed terminated because of economic retrenchment in their practice.

§ **3.14.3.** *Layoff*. If the number of vacancies in other practices is insufficient, layoff will be imposed first on the least senior yearly group, as defined above. The Society will continue to provide medical benefits, in the form and amount existing on the date of such termination, for ninety [90] days from the termination date, at the conclusion of which laid off attorneys may exercise applicable COBRA rights.

§ **3.14.4.** *Recall*. Staff Attorneys transferred or terminated under this provision have recall rights to the jobs from which they were transferred or terminated for eight [8] months from the date of transfer or termination, or until the following July 1, whichever is later. Recall will be issued in the following order, to those who were: 1) actually laid off without having been offered a transfer; 2) transferred; and 3) laid off after having rejected transfer.

§ **3.14.4.1** *2004 Layoffs*. ALAA acknowledges that in June 2004 the Society has granted the grievances filed on behalf of Staff Attorneys in the Criminal Appeals Bureau and the Prisoners Rights Bureau insofar as they objected to layoffs of Staff Attorneys in the Criminal Appeals Bureau and Prisoners Rights Project on the ground that the Criminal Defense Division, the Criminal Appeals Bureau, and the Prisoners Rights Project are part of one area of criminal practice within the Society. In accordance with this grievance, the Society shall consider criminal defense, criminal appeals, and prisoners rights Staff Attorneys as Staff Attorneys in the same criminal practice area, without regard to separate divisional distinctions. The Society shall also consider civil and volunteer Staff Attorneys as Staff Attorneys in the same Civil Practice area, without regard to separate divisional distinctions. Subsequent to the July 16, 2004 Memorandum of Understanding, the Prisoners' Rights Project has been moved from the Criminal Practice to the Civil Practice.

**§ 3.15.**     *RESIGNATION*.  Staff Attorneys will give at least thirty [30] days' notice of intent to resign, exclusive of vacation used during that period.

**§ 3.16.**     *ONE-TIME EARLY RETIREMENT PROGRAM*.

    **§ 3.16.1.**  In 2017, The Legal Aid Society will fund a one time early retirement offering for up to ten staff attorneys who are on active payroll status and: a) have at least 25 years of services as of December 31, 2017; b) are 65 years of age or older as of December 31, 2017; and c) submit written application for the early retirement program on or before December 31, 2017 and thereby agree to retire from The Legal Aid Society effective as of the close of business on January 31, 2018. Each attorney accepting this offer will receive a one-time payment of $50,000, which is subject to any applicable payroll deductions. If more than ten eligible staff attorneys apply for this benefit, it will be given based on seniority.

    **§ 3.16.2.**  In 2018, The Legal Aid Society will fund a one time early retirement offering for up to ten staff attorneys who are on active payroll status and: a) have at least 25 years of services as of December 31, 2018; b) are 65 years of age or older as of December 31, 2018; and c) submit written application for the early retirement program on or before November 30, 2018 and thereby agree to retire from The Legal Aid Society effective as of the close of business on January 31, 2019. Each attorney accepting this offer will receive a one-time payment of $50,000, which is subject to any applicable payroll deductions. If more than ten eligible staff attorneys apply for this benefit, it will be given based on seniority.

    **§ 3.16.3.  The retirement buyout will be effective on or before January 31, 2018 during the first year of the contract, and between December 1, 2018 and January 31, 2019 for the second year of the contract.**

**§ 3.17.**     *HEALTH AND SAFETY*.

    **§ 3.17.1.**     *Generally*.  The Society will provide employees with a work environment that is safe and conducive to good health. It also has the goal of providing offices that are clean, in good repair and secure, and will continue efforts to improve the condition of offices in which its employees work. The Society will promptly clear the work place if, due to any circumstance, it is or becomes unhealthy or unsafe, and will rectify the problem prior to reoccupation. The Society will use all reasonable means to ensure that conditions at all off-site locations (e.g., courts, jails, etc.) are non-harmful, noninjurious, and that they comply with all applicable codes and regulations.

    **§ 3.17.2.**     *Specific Measures*.

    **§ 3.17.2.1.**     *New Technology*.  The Society will provide the Union with advance written notice of introduction into the workplace of new technology which may affect Staff Attorney health or safety. Where feasible, such notice will be given before the Society makes a binding commitment to purchase specific equipment.

    **§ 3.17.2.2.**     *Security*.  The Society will offer lockers or locking furniture to each Staff Attorney.

    **§ 3.17.2.3.**     *Infectious Disease*.  The Society will take all reasonable steps to protect staff from unnecessary health risks and will pursue affirmative measures to assure that the Society's clients are not compelled to endure unnecessary health risks from infectious disease by virtue of their incarceration or poverty. These steps will include: 1) twice annual PPD tuberculosis

tests and any indicated follow-up procedures, at no cost to Staff Attorneys, administered by appropriate medical personnel, along with sufficient work time for necessary visits to a medical office; 2) payment of all unreimbursed out-of-pocket medical expenses related to diagnosis and treatment of TB; 3) medically-appropriate masks on request, accompanied by training and certification in their safe and appropriate use; 4) training in minimizing TB exposure; 5) "safe rooms" in which to conduct interviews with clients suspected of having TB; 6) litigation as appropriate to improve non-Society facilities and to make TB testing and care available to the Society's clients; 7) prompt response to requests for exemption from normal work requirements, including arraignments and homeless shelters, because of compromised immune systems or pregnancy, on a person-specific, symptom-specific, site-specific, and task-specific basis; and 8) appropriate inoculation of Staff Attorneys, at the Society's expense, against such contagious diseases as measles and hepatitis.

§ 3.17.3.     *Joint Union-Management Health and Safety Committee*. The parties will establish a joint Union-Management committee to address workplace health, safety and physical working conditions, including, but not limited to heating, cooling, elevator service and security.

§ 3.17.3.1.   *Duties*. Among its duties, the Committee will consider and make recommendations concerning:   1) problems or potential problems at any job site; 2) anticipatory maintenance (e.g., replacing systems which have exceeded expected years of use, or are nearing such time); 3) space procurement and lease renewal; and 4) other areas of health, safety and physical working conditions.

§ 3.17.3.2.   *Procedure*. All non-emergency health and safety matters will be submitted to the Committee for investigation and resolution prior to filing of any grievance with regard to that subject. If not resolved and/or grieved within 30 days, the Union may immediately proceed to expedited AAA arbitration.

§ 3.17.4.     *Office Space*. The Society will provide approximately one hundred and fifty [150] square feet of office space per Staff Attorney, including support staff, of a caliber equal or superior to space presently provided in the Manhattan or Brooklyn Criminal Defense facilities, subject to availability of suitable space inside court buildings or other leased space. Where compliance with any arbitration decision results in a staffing reduction, there will be a proportional reduction in office workload.

§ 3.18      *Record Keeping.*   ALAA acknowledges that LAS is implementing a time records system for Staff Attorneys for the purpose of assisting LAS in its efforts to maintain and obtain funding to support the work of LAS.

# Article 4/Quality of Representation

**§ 4.1.**     ***STANDARD OF ADVOCACY***.  The Society and its individual attorneys are deeply committed to the highest standards of professional competence and to vigorous representation in each and every case.

**§ 4.2.**     ***CONTINUITY OF REPRESENTATION***.

**§ 4.2.1.**     ***Generally***.  Continuity of representation is an important factor in realizing the most effective representation of clients, in that it:  1) enhances the attorney-client relationship; 2) provides the best opportunity for an attorney to initiate early case preparation; and 3) strengthens development of an integrated theory of representation.

**§ 4.2.2.**     ***Criminal Defense Division***.

**§ 4.2.2.1.**     ***Scope***.  The Society will maintain vertical continuity of representation from Criminal Court arraignment through filing of a notice of appeal and pursuit of a stay of execution after Supreme Court conviction. The Society's form notice of appeal will state that the Society represented the client in the trial court and, where consistent with the client's wishes, will request that representation by the Society continue on appeal.

**§ 4.2.2.2.**     ***Implementation***.  Continuity in the Criminal Defense Division is neither monolithic nor inflexible, but rather adaptive to:

**§ 4.2.2.2.1.**     ***Location***.  The various trial courts of our practice and other institutional and professional obligations;

**§ 4.2.2.2.2.**     ***Responsibilities***.     Responsibilities     of Supervisors, Staff Attorneys and special unit attorneys consistent with § 4.6.1 and with the goals of effective representation and service of the client's best interest;

**§ 4.2.2.2.3.**     ***Training***.  Opportunities for Staff Attorneys to develop skills and gain experience through case or proceeding reassignments which enable less experienced Staff Attorneys to handle matters consistent with their skills and experience (misdemeanor trials and felony preliminary hearings).  Cases will be reassigned for training purposes after consultation between Staff Attorneys and Supervisors, and except in unusual circumstances will not be transferred when an attorney wishes to retain a particular case;

**§ 4.2.2.2.4.**     ***Workload***.  Reallocation of workload to assure timely preparation and effective representation, including:

**(1)** ***Experience***.  Assignments consistent with an individual attorney's level of experience and workload, such as case transfer from non-certified to felony-certified attorneys, or from certified to special unit attorneys;

**(2)** ***Arraignment Balance***.  Availability of Staff Attorneys with requisite experience to accept all assignments at intake without undue delay;

**(3)** ***Withdrawal and Reassignment***.  Where there is a workload problem, the affected attorney will first be withdrawn from further intake. Should additional relief be necessary, cases will be reassigned to Staff Attorneys with the workload capacity and experience necessary to afford timely, effective representation.  Neither of these steps will occur without consultation between the supervisor and the attorney.  Nothing in this Article will operate to modify the grievance procedures contained in § 4.3;

**§ 4.5.**        ***OFFICE DAY***.  An attorney will not be called away from pressing non-courtroom professional activities in the office, unless her supervisor has no reasonable alternative thereto.  In the Criminal Defense Division, upon five [5] days notice by a Staff Attorney, supervisors will approve requests for an office day on which the Staff Attorney does not have conflicting assignments or cases scheduled.  A supervisor will interrupt the office day for an unscheduled institutional assignment only after exhausting her best efforts to substitute other members of complex staff. Should the supervisor have no choice but to interrupt the office day, the Staff Attorney will be permitted to reschedule under the above criteria.  In practices other than Criminal Defense, Management will make every effort to maintain a court coverage schedule which provides Staff Attorneys with at least one [1] office day each week free from such institutional assignments as intake and part coverage.

**§ 4.6.**        ***ATTORNEY-CLIENT-SUPERVISOR RELATIONSHIP***.

        **§ 4.6.1.**        ***Supervisory Responsibilities***.        Supervisors will provide effective, constructive oversight of staff and the work of their offices, including availability for consultation with Staff Attorneys, consistent with their own caseload responsibilities.

        **§ 4.6.2.**        ***Professional Differences***.  Practice Attorneys-in-Charge or their designees will be available for immediate consultation to resolve any professional differences between a Staff Attorney and supervisor in regard to handling a specific case.  If these differences cannot be resolved consistent with applicable professional standards, the attorney will either follow the supervisor's decision or be relieved, after which the attorney may grieve the decision in question.

        **§ 4.6.3.**        ***Evaluations***.  A committee will be formed to explore staff participation in manager evaluations.

        **§ 4.6.4.**        ***Case Coverage.***  It will be Legal Aid Society policy for managers to arrange case coverage when staff attorneys are out on medical leave, on bereavement, or conducting or second-seating hearings and trials.  These changes will be reflected in the Employee Handbook.

**§ 4.7.**        ***TRAINING, EDUCATION AND CERTIFICATION***.

        **§ 4.7.1.**        ***Committee***.  There will be a joint Union-Management committee in each practice to develop and monitor training and education programs for Staff Attorneys.

                **§ 4.7.1.1.**        ***Initial Training.***  Each practice shall provide full initial training for new attorneys in the practice's basic practice areas. For the Juvenile Rights Practice, there shall be initial substantive training in all non-primary practice areas.

                **§ 4.7.1.2.**        ***Annual Training***.  Each practice will provide at least one comprehensive (8 hours or more) training/CLE per year, targeted toward experienced staff, addressing issues relevant to their practice.

                        **§ 4.7.1.3.**        ***Resources***.

                                **§ 4.7.1.3.1.**        ***Individual Materials***.  The Society will exercise reasonable efforts to ensure reliable computer access for individual Staff Attorneys and provide individual Staff Attorneys with timely distribution of all appropriate legal resource materials, including the following.

                                **(1)** ***Criminal and Juvenile Rights Practices***.
Each attorney in the Criminal and Juvenile Rights Practices will receive a copy of the: 1) Penal Law (PL); 2)  Criminal Procedure Law (CPL); 3) Vehicle and Traffic Law (VTL); and 4) up-to-date

manuals containing forms used by police, defense, leading cases, statutes, etc., which will be expeditiously distributed.

(2) *Civil Practice*. Appropriate manuals and textbooks will be distributed to each Civil Practice Staff Attorney. The civil practice deskbook, federal rules, and federal and local court procedures will be provided to any Staff Attorney who requires them.

§ **4.7.1.3.2.**      *Central Resources*. The Society will make available all necessary centralized legal resources, including: 1) office-level law libraries; 2) brief and motion banks; 3) important new decisions; 4) one [1] set of New York Supplement reports for every ten [10] attorneys; 5) a non-Staff Attorney responsible for coordinating, maintaining and/or circulating the above materials; and 6) Staff Attorney library privileges at law schools and bar associations.

§ **4.7.2.**      *Orientation*. The following orientation will be provided to newly employed attorneys, including, where appropriate, inter-practice transferees. Within the first seven [7] to ten [10] days of employment, each new attorney will participate in discussions led by supervising attorneys and/or experienced Staff Attorneys concerning the Society's goals and indigent representation, and observation and rotation through the courts. Initial on-the-job training will include observation of, and participation in, various parts of the Criminal and Family Courts, under guidance of supervisory and/or Senior Staff Attorneys. Civil Practice attorneys will be given an opportunity to observe Housing Court trials, commercial actions and administrative hearings. Civil Practice client interviews and initial work placement will take place in the third through tenth week.

§ **4.7.3.**      *Felony Certification*.

§ **4.7.3.1.** The Society's goal is for Criminal Defense Practice Staff Attorneys to be limited felony certified by 12 months of active practice while employed by the Society (including the new hire training) and fully certified by 36 months of active practice while employed by the Society (including the new hire training).

§ **4.7.3.2.** Limited Felony Certification allows a Staff Attorney to handle all Class E felonies where the client is either a non-predicate or a nonviolent/violent predicate, Class D felonies where the client is either a non-predicate or nonviolent predicate, and Class B and C drug felonies where the client is a non-predicate or non-violent predicate. Based on experience and effective representation in prior cases, a Criminal Defense Practice Staff Attorney may be granted permission in advance by her immediate supervisor(s) to represent a client above these levels.

§ **4.7.3.3.** Full Felony Certification allows a Staff Attorney to handle all felony cases which are handled by The Legal Aid Society, except homicide cases for which additional experience is required and with the recognition that, given the severity of A-I felonies, a supervisor will review with the Staff Attorney when it is appropriate to handle an A-I felony as lead counsel.

§ **4.7.3.4.** All internal transfers or lateral hires to the Criminal Defense Practice, including from other Practices or units within the Criminal Defense Practice, will have an individualized analysis at the start of their Criminal Defense Practice tenure utilizing the criteria in §§ 4.7.3.5. and 4.7.3.6. When applicable, based on the individual's prior experience, an internal transfer or lateral hire should reach limited and full certification in advance of the 12 and 36 month benchmarks. In all other cases, the below procedure will apply.

§ **4.7.3.5.** After 12 and 36 months of employment, each uncertified or limited certified Staff Attorney, respectively, will have a meeting with her immediate supervisor(s),

with the right to have a union representative present. At this meeting, the Staff Attorney's hearing, trial and case resolution practice will be discussed and a decision will be made as to whether the Staff Attorney will be advanced in certification.

§ **4.7.3.6.** Although hearing, trial, motion and case resolution practices are relevant to the certification decisions, the entirety of the Staff Attorney's work will be considered and discussed.

§ **4.7.3.7.** The Society will provide specific reasons as to why an individual Staff Attorney should not be advanced in certification.

§ **4.7.3.8.** When a Staff Attorney is certified, a written notice of such shall be provided to her within 30 days of such decision. A Staff Attorney who becomes certified remains so regardless of a subsequent transfer to a different complex/cluster or borough.

§ **4.7.3.9.** Should a Staff Attorney not be certified at the 12 and 36 month benchmarks, a written plan must be devised between the supervisor and the Staff Attorney to lead to certification.

§ **4.7.3.10.** Follow-up meetings must occur every three months until the Staff Attorney is certified.

§ **4.7.3.11.** Nothing in this section prevents a Staff Attorney from being certified prior to the time periods contained herein. This section shall apply to all current Criminal Defense Practice Staff Attorneys as well as new hires and new transfers. A Staff Attorney shall have the option to dispense with the various written forms, plans, and notices contained in this section in which event all such proceedings shall only be conducted orally.

§ **4.7.3.12.** All Criminal Defense Practice Staff Attorneys shall be entitled to felony training within 12 months of hire or transfer to the Criminal Defense Practice.

§ **4.7.4.**    ___Continuing Legal Education___.

§ **4.7.4.1.**    ___Internal___. Notwithstanding the above provisions, the Criminal Practice training program, attended, where appropriate by attorneys from the Juvenile Rights Practice, will include:   1)  two [2] attorneys devoted full-time to training and education; and 2) instruction in the Code of Professional Responsibility and in contempt proceedings. Subject to budgetary considerations, the Civil Practice will hire a full-time trainer and develop a continuing education program that includes expert *pro bono* speakers. The Society will designate staff to provide Society-wide information on an ongoing basis regarding the Society's Continuing Legal Education (CLE) programs that are available for all Staff Attorneys

§ **4.7.4.2.**    ___External___. Subject to court staffing and funding, Staff Attorneys will continue, at the Society's expense, to attend appropriate PLI or other approved professional courses in New York City that directly relate to the attorneys' work, subject to court staffing and budgetary considerations. The Society will inform staff about, and seek to expand the availability of, tuition-free law school courses.

§ **4.7.5**    **Professional Development.** The Society and the Union will establish a joint Union-Management Staff Attorney Professional Development Committee with the aim to create rotator and other professional development positions both society-wide and within each practice and borough.

**§ 4.8.**   *MALPRACTICE INSURANCE*.   The Society will defend and hold harmless Staff Attorneys sued for malpractice under the terms and conditions contained in the NLADA policy, to the extent of $1,000,000/$1,000,000.   The Society, in its discretion, may either purchase such coverage from an insurance carrier or self-insure.

**§ 4.9.**   *OUTSIDE COUNSEL*.   The Society and the Union will each provide matching amounts up to $5,000 per contract year for Staff Attorneys who require outside counsel in matters arising solely from their Society employment.   The Union and the individual Staff Attorney will have complete discretion as to whether outside counsel is justified, and in selection of, and fees for, such counsel, but the Society will pay outside counsel only after its designated representative has, prior to retention of outside counsel, had the opportunity to fully discuss each of the above discretionary issues with the Union President or her designee.   These benefits will not be funded, and all payments by the Society will be made directly to the outside retained counsel upon receipt of her statement reflecting the amounts charged to each party.

**§ 4.10.**   *SPECIAL LITIGATION*.

    **§ 4.10.1**   *Special Litigation.*   Each practice will assign lawyers on a full-time basis to special litigation projects that address matters of substantial client interests that are unsusceptible to customary trial and appellate processes, such as challenges to complex legal decisions and to statutory provisions; initiation of prisoners' rights test cases; and implementation of post-conviction remedies.

    **§ 4.10.2**   *Rotator Position.*   Each practice will create at least one rotator position for their special litigation/law reform unit (if applicable) that will allow current staff attorneys to join the unit for a period of two years.

**§ 4.11.**   *SUPPORT SERVICES*.   The Society will provide support staff of adequate number and quality.   The Society will complete the computerization of all offices by June 30, 2000.

**§ 4.12.**   *LAW ENFORCEMENT ISSUES*.

    **§ 4.12.1.**   *Police Conduct Committee*.   There will be a Joint Union-Management Police Conduct Committee representative of all Society practices.

    **§ 4.12.2.**   *Programs and Materials*.   The Society will provide the Joint Police Conduct Committee with the resources to develop and implement a Society-wide plan to seek out, maintain, update, and make available the following programs and materials in relation to the New York City Police Department and all other relevant law enforcement agencies (e.g., PAPD, FBI, DEA, BATF, etc.):  1) computerized citywide records of individual police misconduct, abuse and brutality, accompanied by a mechanism through which such records can be routinely input and accessed; 2) manuals and other statements of police policy, including the NYPD *Patrol Guide, Administrative Guide, Detective Guide, OCCB Investigative Guide, Narcotics Division Manual of Procedures, Legal Bulletins, Special* and *Interim Orders* and all other such materials which exist for specialized units within the NYPD and other law enforcement agencies; 3) guides to all police forms, annotated by case type; 4) preprinted or computer-formatted subpoenas designed to procure appropriate police reports by case type; 5) complete reference sets of police reports and procedures, at least one [1] copy of which will be maintained in each relevant Society office; 6) checklists to ensure the earliest possible transmittal of police reports from trial to appellate offices; 7) rosters of current and former

members of law enforcement agencies available to educate attorneys about police practices; 8) form motions and sample memoranda of law that discuss the legal basis for discovery of police reports and personnel records at the earliest possible stage; 9) incorporation of the above police practice issues into the Society's training programs; and 10) referral of individual clients to appropriate agencies.

**§ 4.12.3.**    *Police Abuse Project*.  The Joint Police Conduct Committee will examine the mission of, and available funding for, a dedicated Society-wide unit to address police misconduct, abuse and brutality through litigation (such as broad injunctive relief and damage claims) and other means.  Funding will be subject to final approval by the Society's Board of Directors.

**§ 4.13.**    *SOCIETY POLICY POSITIONS*.  The Society and the Union will confer and consult closely in regard to all areas that involve professional responsibilities and obligations of Staff Attorneys and on all questions of public interest about which the Society plans, or has been requested, to express an opinion.  The Society will notify and seek participation from the Union as early as possible regarding any potential changes envisioned by management that may impact on provision of client service delivery methods, and/ or the structure of a practice, office or program.

Addendum - Recent Historical Memoranda Of Understanding Provisions

1. Effective for the December 15, 2006 payroll, the Society will pay a lump sum of $1,950 to each member of the bargaining unit who is on staff on steps 5-30 as of the date of ratification.

2. Effective February 17, 2012, the Society will make a one-time lump sum payment to each ALAA member who was in active status as of February 2, 2012. This one-time lump sum payment consists of 2 percent of salary with fringe benefits for the active ALAA membership, ALAA's proportionate share of the total health care savings for the period January 1 - June 30, 2012 with fringe benefits, and an additional $22.50 per member. Because ALAA chose to aggregate these funds and distribute equal shares, such shares equal $2,000 before fringe is netted.

3. Within thirty (30) days of ratification of the January 28, 2013 Memorandum of Understanding, the Society will make a one-time supplemental payment to each ALAA member who was in active status as of the January 31, 2013 ratification vote. The Society will make such a one-time supplemental payment to each ALAA member who was on an authorized leave on January 31, 2013 within thirty (30) days of the member's return from the authorized leave. The one-time supplemental payment consists of 4.3 percent of gross annual salary as set by the ALAA member's step on the date of ratification, subject to applicable payroll deductions. This one-time supplemental payment is pensionable. Within thirty (30) days of ratification of the January 28, 2013 Memorandum of Understanding, The Legal Aid Society will make a one-time longevity payment to each ALAA member who is on Step 26 or higher and in active status as of the January 31, 2013 ratification vote. The Society will make such a one-time longevity payment to each ALAA member who is on Step 26 or higher and on an authorized leave on January 31, 2013 within thirty (30) days of the member's return from the authorized leave. The one-time longevity payment consists of a payment of $1,000, subject to applicable payroll deductions. This one-time longevity payment is pensionable.

4. All compensation and benefits for the period October 1, 2008 through September 30, 2009 shall be subject to negotiations that shall commence no later than July 1, 2008. In the event those negotiations do not lead to an agreement on compensation and benefits changes for the October 1, 2008 through September 30, 2009 period, the parties will be free to take such economic action as would be available upon the expiration of the contract. The parties have agreed to recommence bargaining when the Society's funding from the City has been determined for the July 1, 2012 – June 30, 2013 fiscal year, and subsequently have extended the term of the collective bargaining agreement through September 30, 2013. During the life of this agreement the parties shall continue to use their best efforts to secure any and all funds from the City of New York and other funders that are not restricted from use for salary increases. Upon notification of receipt of any such funds that can be used for salary increases from the City of New York, within (30) days, the parties shall reopen this agreement for all purposes (covering economic and non-economic terms) and shall negotiate the distribution of any such funds to the ALAA/UAW 2325 bargaining unit in a fair and equitable manner for salary increases. The distribution of any such funds that can be used for salary increases would be

effective as of the beginning of the period of time for which such funds have been allocated by the City.

5. The Society will offer a one-time early retirement program for all Staff Attorneys who: (a) are 60 years or older as of January 31, 2008; and (b) have at least 20 years of service as of January 31, 2008. A Staff Attorney who meets these two eligibility criteria who informs the Society in writing by or before January 2, 2008 that she or he will retire from the Society effective January 31, 2008 shall be eligible thereafter for health benefits provided in each subsequent year to employed Staff Attorneys at the employee rate in effect in each subsequent year for employed Staff Attorneys until such a participant in this early retirement program reaches the age of 65, at which point the participant shall be eligible for retiree health care benefits provided pursuant to Section 2.6.3.5 of this collective bargaining agreement and/or any amendments or modifications to that section in effect when the participant attains the age of 65.

6. Effective April 1, 2015 all staff attorneys will receive a cost of living adjustment (COLA) equivalent to 2.5% of their base salary and be paid in accordance with the salary step schedule listed under "Effective 4/1/2015" in Exhibit 1. Effective October 1, 2015 all staff attorneys will be paid in accordance with the salary step schedule listed under "Effective 10/1/2015" in Exhibit 1. Within thirty (30) days of ratification of the October 14, 2015 Memorandum of Understanding, The Legal Aid Society will implement the retroactive salary increases set forth above for each Staff Attorney in active status at that time. For each Staff Attorney who is on active leave when the Society implements the retroactive salary increases at the levels set forth in Exhibit 1, the Society will make retroactive salary adjustments, if any are required, within thirty (30) days of the Staff Attorney's return from authorized leave. In accordance with the Society's salary payroll procedures, retroactive salary increases are subject to applicable payroll deductions and are pensionable.

# Signature Page

Executed this 17th day of May , 2018

**The Legal Aid Society**

**Association of Legal Aid Attorneys,
UAW Local 2325 (AFL-CIO)**

By: _____

Mr. Seymour W. James, Jr.
Attorney-in-Chief

By: _____

Ms. Deborah Wright
President

# Appendix 1
## ALAA/ LAS Salary Chart
### Effective 3/1/17

| STEP | Effective 3/1/2017 | Effective 7/1/2018 |
|------|--------------------|--------------------|
| LG | $52,531 | $53,582 |
| 1 | $61,500 | $62,730 |
| 2 | $62,525 | $63,775 |
| 3 | $63,550 | $64,821 |
| 4 | $66,489 | $67,819 |
| 5 | $69,095 | $70,477 |
| 6 | $74,307 | $75,793 |
| 7 | $78,020 | $79,580 |
| 8 | $81,090 | $82,712 |
| 9 | $83,640 | $85,313 |
| 10 | $88,436 | $90,205 |
| 11 | $93,920 | $95,798 |
| 12 | $98,033 | $99,994 |
| 13 | $103,390 | $105,457 |
| 14 | $104,210 | $106,294 |
| 15 | $105,030 | $107,130 |
| 16 | $105,850 | $107,967 |
| 17 | $106,670 | $108,803 |
| 18 | $107,490 | $109,639 |
| 19 | $108,310 | $110,476 |
| 20 | $109,130 | $111,312 |
| 21 | $109,950 | $112,149 |
| 22 | $110,770 | $112,985 |
| 23 | $111,590 | $113,821 |
| 24 | $112,410 | $114,658 |
| 25 | $113,230 | $115,495 |
| 26 | $113,335 | $115,602 |
| 27 | $113,441 | $115,710 |
| 28 | $113,700 | $115,974 |
| 29 | $114,006 | $116,286 |
| 30 | $115,638 | $117,951 |
| 31 | $115,800 | $118,116 |
| 32 | $115,992 | $118,312 |
| 33 | $116,298 | $118,624 |
| 34 | $116,604 | $118,936 |
| 35 | $116,910 | $119,248 |

# Appendix 2
# Benefits Summary

| Life and Accidental Death & Dismemberment Insurance | |
|---|---|
| **Benefit (Employee Only)** | **Amount** |
| Life Insurance | An amount equal to 2 times your basic annual earnings, as determined by your Employer |
| Maximum Life Benefit | $100,000 |
| Accidental Death or Dismemberment | An amount equal to 1 times your basic annual earnings, as determined by your Employer to a maximum benefit of $25,000 |

# Index

ABA Standards.....................................15, 27
Access to Financial Records, by Union .......4
Accidental Death & Dismemberment
   Insurance ...................................................39
Advancement to Step One ..........................8
Affirmative Action ........................14, 15, 16
Agency Shop...............................................43
Alternative Defender Organizations ............7
Anniversary Date ......................8, 10, 12, 24
Appendices:
   Appendix 1/Salary Scale......................38
   Appendix 2/Benefits Summary
   Life and Accidental Death &
     Dismemberment Insurance...............39
Arraignments...............................................26
Continuity of Representation ..............26, 27
Lobster Shift................................................8
Night Court ..........................................21, 22
Tuberculosis................................................25
Assistant District Attorneys .......................7
Attorney-Client Relationship....................29
Bar Examination ........................................17
Bar Registration Fee ...................................8
Bereavement Leave...............................17, 18
Brief and Motion Banks............................30
Child Care ..................................................18
Civil Practice:
   Part-Time Work.....................................19
   Personal Days.........................................10
   Training..................................................27
   Vacation Buy-Back ................................11
COBRA.......................................................23
Collective Bargaining Agreement:
   Headings and Terms................................3
   Negotiation..............................................3
   Reopener .................................................7
   Reproduction and Distribution.................4
   Term ........................................................4
   Health Insurance ...................................10
Dues and Fees, Union .................................4

Comparability ........................................7, 11
Compensation:
   Bar Registration Fee ...............................8
   Compensatory, Personal and
     Flex-Time.............................................9
   Health Insurance .........................10, 11, 12
   Life Insurance .......................................12
   Loan Forgiveness.....................................8
   Pension...................................................12
   Salary ................................................7, 38
   Tax Shelters...........................................12
   TransitCheks............................................8
   Vacation.................................................12
Compensatory Time...............................9, 10
Continuing Legal Education .....................32
Continuity of Representation ..............27, 28
Criminal Appeals Bureau:
   Part-Time Work.....................................19
   Personal Days.........................................10
   Vacation Buy-Back ................................12
Criminal Defense Division:
   Compensatory Time............................9, 10
   Continuity of Representation ............26, 27
   Education ..........................................29, 31
   Felony Certification ................................30
   Office Day..............................................29
   Office Space.....................................20, 25
   Part-Time Work.....................................19
   Personal Days.........................................10
   Training..................................................26
Criminal Procedure Law (CPL).................29
Dependents.................................................11
Disability...................................17, 18, 20, 21
Disciplinary Action .....................................5
Discrimination............................................14
Domestic Partner:
   Bereavement Leave...........................17, 18
   Child Care Leave ..................................18
Education Programs....................................31
Employment Policy....................................15

Employment Status .....................................16
Expenses ...................................................21
Fair Employment Practices .................14, 16
Felony Certification .....................................30
Fellowships ..................................................8
Financial Records..........................................4
Flex-Time...................................................10
Foreign Language Classes, Reimbursement for........................................................22
Free Speech................................................19
Future Joint
Lobbying…………………………………..6
Grievances:
General...................................5, 23, 24, 28
Continuity ..............................................26
Health and Safety...................................24
Probationary Period, of..........................16
Professional Differences ........................29
Workload................................................27
Health and Safety.................................24, 25
Health Insurance:
Administration .......................................10
Changes..................................................10
Contagious Diseases ..............................25
Dependents.............................................11
Eligibility .........................................10, 11
Employment............................................11
Enrollment..............................................11
Lesbian and Gay Partners ......................11
Part-Time Work......................................20
Tax Shelters............................................12
Hepatitis ....................................................25
Hiring:
Affirmative Action ..........14, 15, 16, 20, 23
Anniversary Date ..............8, 10, 12, 13, 23
Bar Examination ....................................17
Joint Committee for ...............................15
Transfer, due to economic retrenchment .....................................................22,23
Union Dues and Fees ................................3
Holidays:
Layoff..........................................22, 23, 24
Leave:
Anniversary Date ..............8, 10, 12, 13, 23
Bereavement ....................................17, 18

Enumerated ..............................................19
Lobster Shift Pay for................................8
Vacation............................................12, 13
Illness or Disability ...................................17
Individual Placement on Salary Scale.........8
Infectious Disease .....................................25
Interpersonal Conflict ...............................19
Interview Conditions..................................28
Job Security (Layoff) ...........................22, 23
Joint Union-Management Committees:
Affirmative Action ..........14, 15, 16, 20, 23
Felony Certification ................................30
Health and Safety...............................24, 25
Health Benefits...........................10, 24, 25
Hiring.................................8, 14, 15, 16
Police Conduct .......................................33
Representatives to .....................................5
Senior Staff Retention............................22
Tax Shelters............................................12
Training and Education...............29, 30, 31
Workload..........................9, 10, 19, 27, 28
Juvenile Rights Practice:
Part-Time Work......................................19
Personal Days.........................................10
Training..........................26, 28, 29, 30, 31
Vacation Buy-Back .................................13
Labor Relations:
Collective Bargaining Agreement.............3
Grievances....................................5, 23, 24
Joint Union-Management Committees....5, 10, 14, 15, 16, 19, 20, 23, 25, 27, 28, 29, 30, 31
Management Rights ...................................6
No Strike or Lockout ................................4
Union Access to Financial Records ..........4
Union Activities .......................................4
Union Recognition and Agency Shop.......3
Union Representative, Right to................3
Law Enforcement Issues......................32, 33
Law Graduate....................................3, 8, 17
Law Libraries.............................................30
Legal Resource Materials ....................30, 31
Lesbian and Gay Partners .........................11
Life Insurance ...........................................12
Loan Forgiveness........................................8

Lobster Shift.................................................8
Lockers.......................................................25
Lockout .......................................................4
Long-Term Disability....................11, 12, 17
Malpractice Insurance................................32
Management Rights .....................................6
Manuals................................................29, 30
Meal Allowance .........................................22
Measles ......................................................25
NYC Police Department ......................32, 33
New York Supplement ....................29, 30, 31
Night Court ...........................................21, 22
NLADA Standards .........................28, 30, 31
No Strike ......................................................4
Office Day...................................................29
Office Space................................................25
Parental Leave............................................18
Part-Time Work:
    Generally..............................................19, 20
    Personal Days...........................................10
    TransitCheks ............................................8
    Vacation Buy-Back .................................13
Penal Law (PL) ..........................................30
Pension.................................................12, 24
Personal Days.............................................10
Personnel Records................................22, 31
Police....................................................32, 33
Post-Conviction Remedies.........................33
Preamble ......................................................2
Pregnancy.............................................18, 23
Prisoners' Rights ..................................25, 33
Private Interview Facilities ..................28, 29
Private Practice ..........................................18
Pro Bono Representation ...........................22
Probationary Period ...................................16
Professional Differences ...........................29
Promotions............................................20, 21
Quality of Representation:
    ABA Standards............................14, 15, 27
    Attorney-Client Relationship......26, 28, 29
    Code of Prof. Responsibility.............27, 31
    Continuity of Representation ............26, 27
    Education .................................7, 11, 29, 31
    Felony Certification ................................30
    Interview Conditions...............................28

Law Enforcement Issues........................32
Recall from Layoff........................17, 22, 23
Record Keeping…………………………...25
Release Time, for Union staff.....................4
Reopener, Salary .........................................7
Resignation ................................................24
Sabbatical…………………………………..18
Salary:
    Basic Salary Schedule/ Scale.............. 7, 8
    Credit for Prior Service.............................8
    Union Officers ..........................4, 5, 6, 7, 8
Security ......................................................25
Senior Staff ........................17, 20, 21, 22, 31
Seniority:
    Credit for Prior Service.............................8
    Layoff..................................................22, 23
    Part-Time Work.................................19, 20
    Supervisors, Returned to Staff.................8
    Transfers............................8, 20, 23, 32, 33
    Union Staff................................................4
Society Policy Positions............................33
Special Litigation...........................10, 13, 32
Standard of Advocacy ...............................26
Step/Year, and Salary .............................7, 8
Subpoenas, of Police Reports .............32, 33
Supervisor, Conflict with ..........................19
Supervisory Responsibilities.....................29
Support Services ........................................32
Tax Shelters................................................12
Technology, Introduction of New .............24
Telecommuting ..........................................20
Training, Ed. and Certification ..………...26,
    29, 30, 31
Transfer:
    Interpersonal Conflict .............................19
    Involuntary...............................................21
    Job Security..............................................23
    Orientation in New Practice....................32
    Recall from Layoff...................................23
    Voluntary..................................................20
    Workload Grievance ..........................27, 28
TransitCheks ................................................8
Travel Reimbursement.........................21, 22
Tuberculosis ...............................................25
Union:

**2014-2016 Contract**                    Index                    **Page 43**

Access to Financial Records ....................4
Activities ...........................................4, 20
Agency Shop.............................................3
Collective Bargaining Agreement.3, 10, 24
Dues and Fees ...........................................3
Joint Union-Management Committees......5,
   10, 14, 15, 16, 19, 20, 23, 25, 27, 28, 29,
   30, 31
Leave.....................4, 7, 8, 9, 10, 12, 13 23
Membership .............................................3
No Strike or Lockout ................................4
Officers ...........................................4, 5, 6
Recognition ..............................................3
Release Time.............................................4
Representatives ...............................4, 6, 15
Staff..........................................................4
Vacation...............12, 139, 10, 12, 13, 18, 24
Vertical Rep. (Continuity)..........................26
Wage Reopener ...........................................7
Workload:
   Continuity of Representation ............26, 27
   Generally...........................................27, 28
   Flex-Time...........................................9, 10
   Grievance ...............................................27
   Office Space............................................25
   Part-Time Work.......................................19
   Standards................................................28
   Vacation.............................................12, 13

(4) *Consolidation*.  Multiple cases with the same client pending in one [1] borough, handled by more than one [1] Staff Attorney; or

(5) *Unavailability*.          Extended sickness, disability, or termination of employment.

§ 4.2.2.3.    *Review and Adjustment*.  The Society's legal representation will be reviewed and adjusted as necessary to maintain continuity in the event of changes in court structure.

§ 4.2.3.    *Other Practices*.  Practices other than the Criminal Defense Division shall maintain continuity of representation.  Any modification of continuity must first be negotiated with the Union.

§ 4.3.    *WORKLOAD*.
§ 4.3.1.    *General*.
§ 4.3.1.1.    *Standards*.  Within six [6] months of this agreement, standing joint Union-Management workload committees in each practice will set provisional guidelines, subject to ongoing revision and refinement, for maximum individual attorney workload consistent with high-quality representation for each LAS client.  Where that guideline is exceeded, the attorney will be relieved through such steps as reduced intake, case transfer, and/or other appropriate measures.  Acknowledging that this committee was not established in the last contract, the Union and the Society will establish this committee during the term of this agreement.

§ 4.3.1.2.    *Negotiations of Society Contracts*.  The Society will, in consultation with the Union, use its best efforts to negotiate for all practices contracts that provide sufficient resources to handle the workload contemplated, and that further provide for necessary adjustments of resources and/or workload over the term of the contract.  Whenever feasible, Management will solicit the Union's views regarding submission of narrative reports for funders or other oversight bodies concerning Legal Aid performance under its contracts.

§ 4.3.1.3.    *Monitoring*.  The Union will participate with Management in regular monitoring of workload in all practices, including, but not limited to, monthly counts of Staff Attorneys, caseload, institutional assignments and filings per office.  In some practices, current technology lacks the necessary capacity to fully maintain this information; the Society will make its best effort to manually maintain the information and to update the technology as soon as practicable.  The Society will provide the reports of said monitoring to a union representative on a monthly basis, or provide access to this information at any time on Law Manager, or other technology used for this purpose.

§ 4.3.1.4.    *Consultants*.  The Union will participate in decisions as to whether outside consultant expertise is appropriate to assist in workload and other analysis related to client representation, and in the selection of such consultants when they are to be retained.

§ 4.3.2.    *Grievances*.
§ 4.3.2.1.    *Standard*.  The standard against which workload grievances are evaluated is whether further cases can be accepted consistent with professional responsibility.  The following are among the relevant factors to be used in applying that standard to a given situation: 1) court structure; 2) character of cases assigned to the grievant (individual or office); 3) efficiency, productivity and diligence of the grievant (individual or office) in handling those cases; 4) Code of Professional Responsibility; 5) ABA standards; 6) NLADA standards; and 7) level of services currently provided by other quality indigent defense providers in major urban jurisdictions.

### § 4.3.2.2.   *Procedure*.

**(1) *Individual Grievance*.**   Informal discussion with the grievant's complex or office head or her designee will be held within twenty-four [24] hours of the request for a meeting, excluding weekends and holidays.  Immediately thereafter, the grievant may file a written appeal with the boro or office head, practice Attorney-in-Charge and the Attorney-in-Chief (or their designees), in that order, each of whom will have no more than two [2] work days to respond in writing.

**(2) *Office Grievance*.**  The Union may initiate an office-wide workload grievance on the basis that two-thirds [2/3] of the Staff Attorneys in the office believes the standard, as defined above at § 4.3.2.1., has been, or is about to be, met.  The practice Attorney-in-Charge may attempt to rectify the problem through personnel adjustments, including new attorneys or support staff, temporary transfer of attorneys or support staff from other Society offices for a specifically limited duration, reallocation or reduction of work load, transfer of a limited number of cases to supervisors consistent with their own responsibilities, or any other measure consistent with this Agreement which may alleviate the condition.  Except as a last resort, the Society will not permanently transfer attorneys from other offices, and only then if warranted by long-range demands in each office.  If no plan is presented, or if two-thirds [2/3] of the affected Staff Attorneys does not vote to accept the plan, the matter will be submitted to a panel, as hereafter described within ten [10] working days (which period may be extended by mutual agreement between the Attorney-in-Charge and the Union).  The plan need not be implemented within the ten-day period, but will, at a minimum, specify the dates by which its various aspects will be implemented.

**(3) *Arbitration*.**  If the grievance is not disposed of through the above process, the Union may, within two [2] work days after the Attorney-in-Chief has rendered her decision, file a written demand for arbitration with the Attorney-in-Chief on behalf of the grievant.  An arbitration will be convened within five [5] working days of receipt by the Attorney-in-Chief of the demand for arbitration.  The parties and the arbitrator will regard such proceeding as an urgent matter requiring expeditious disposition.  The arbitrator will be selected from the appropriate panel of fifteen [15] names established and/or modified by the parties' mutual agreement, from which each party may strike three [3] names.  If, after such elimination, the next prospective arbitrator panel member cannot adhere to the expeditious schedule set forth herein, the following panel member will be selected.  The panel will hand down its decision as expeditiously as possible, but in any event within thirty [30] days after the close of hearings.  Where a grievance is upheld, the office will stop accepting cases within fifteen [15] working days of the panel's action and will resume intake only within the framework of the panel's decision.

**§ 4.4.   *INTERVIEW CONDITIONS*.**   Private attorney-client interviews are essential to delivery of effective representation.  Whenever interview facilities in any court lack privacy, the parties will first seek to rectify such conditions by administrative action.  If, within ninety [90] days after inception of administrative action, there is no objective indication of effective remedial action, the Society, in consultation with the Union, will take appropriate legal or other action to ensure availability of private interview facilities.  The Society will also support necessary and proper actions taken by Staff Attorneys in the defense of their clients' right to confidential interviews.